JAMES R. DOCKRAY AND WIFE, *in equity,*

*versus*

HENRY THURSTON AND WIFE, AND ALS.

Where the prayer in a bill in equity is that reconveyance of an estate be ordered and decreed, although there may have been concealment of the truth, and fraudulent representations on the part of the respondent in obtaining the conveyance; yet while the complainants hold a bond given in consideration of the same, they cannot sustain a bill in equity for such reconveyance without discharging or offering to discharge such bond.

Nor until all parties interested in the estate and bond have been notified, and become parties to the suit.

A division of an estate according to the hereditary rights of the heirs, cannot be made in the absence of those whose rights are to be determined by such division.

The bill alleges that Plummer, on the second day of May, 1840, was seized of a parcel of land; that being so seized, said Plummer on the same day conveyed one-half of the same land to his daughter Jane, one of the defendants; that this deed was made in trust and without consideration; that on June 2d, 1846, said Jane reconveyed the said premises to said Plummer in execution of the trust; but there was a neglect to have the deed recorded; that Plummer died December, 1847, and there was no administration on his estate; that this reconveyance being unrecorded, the heirs of Plummer, with the exception of Samuel M., were without any other than indirect knowledge of the fact of its ever having been made; that on or about the 12th of May, 1848, said Jane made a written acknowledgement of the terms on which she held the premises; that subsequently said Jane was requested to convey to each of the heirs their proportionate part of the premises, which she refused to do, and said she had lost the deed from her father to her, also denying that she had ever reconveyed it to her father; that induced by these and other fraudulent representations of the said Jane, the said Mary Ann S. Dockray, for the sake of obtaining for the

other heirs their portions of the property, executed a deed to said Jane, May 12, 1848, at which time said Jane conveyed to Harriet Hersey, one of the heirs, the agreed portion coming to her as one of the heirs, and executed an obligation to convey to the other heirs, except the said Dockray, their respective portions; that subsequently, October, 1848, said Jane, claiming to be the owner of the land just described, received of the A. and St. L. R. R. Co. $121 in money for damages to the same, which sum she still retains.

That on the 23d of Dec., 1848, the deed from Jane to said Moses was accidentally found in his house.

In her answer Jane denies that the deed from her father to her was given without consideration, but says she gave her note for it, although she believes he intended it as a gift.

That she reconveyed the property without consideration; that for aught she knew the existence of that reconveyance was *unknown* to the other heirs. She admits also that she acknowledged to S. M. Plummer that the land had been reconveyed, and denies that she ever had such an interview with Mrs. Dockray as is alleged; but says the proposition came from Mrs. Dockray to release her interest in said land, if said Jane would convey to the other heirs.

*Shepley & Dana,* for plaintiff, argued that the conveyance from Moses Plummer was clearly made in trust. Though the defendants, Thurston and wife, deny this, the whole transaction shows that the statement to this effect in the bill is correct. For while Thurston and wife in their answer say that she paid for it by her note of hand, there is no pretence that she ever paid the note, and she says that she believes her father intended it as a gift.

It is admitted by Thurston and wife that the premises were voluntarily reconveyed by her to her father. If she had already *paid* for the property, she would not have made a reconveyance without consideration.

The misrepresentations of Mrs. Thurston are explicitly proved. Mrs. Dockray, in the absence of her husband, believing that the property was really in the hands of Mrs.

Thurston, was induced by her fraud and falsehoods to surrender *her* rights for the sake of obtaining for the other heirs some portion of the estate. The conveyance, therefore, executed by her on May 12, 1848, was obtained in fraud, and Mrs. Thurston should be ordered to reconvey to complainants the proportion belonging to Mrs. Dockray as one of the heirs of Moses Plummer, together with her proportion of the money received from the A. and St. L. R. R.

1. Here was a false and fraudulent representation of material facts which constituted inducements to the conveyance, on which the grantor relied and had a right to rely. Such representations constitute a ground for rescission. Harding v. Randall, 15 Maine R., 332; Hough v. Richardson, 3 Story, 659; Rosevelt v. Fuller, 2 Cowen, 129; Smith v. Richards, 13 Peters, 26; Tyler v. Black, 13 Howard, U. S., 230.

2. Where parties are dealing with each other in a fiduciary manner, as in the relation of attorney and client, or portions *or members of the same family dealing about family matters,* the obligation to a disclosure of all material facts becomes imperative. Gordon v. Gordon, 3 Swanston, 400; Story's Eq., sec. 207–8; Adams' Eq., p. [179]; Wheeler v. Leedors, Leading Cases in Equity, pp. 254, 255–6, and cases there cited.

A contract may be set aside for fraudulent misrepresentations, though the means of obtaining information are open to the party deceived, where from the circumstances he was induced to rely on the other party's representations. Regnell v. Sprague, 8 Have., 222; Adams Eq., 422.

*Rand* for defendants.

Bill must be dismissed because Plummer, Wilbur and Horsey, parties to arrangement and holding deed and bond, are necessary and *indispensable* parties, and do not appear, and cannot be compelled to appear—that being out of jurisdiction does not dispense with them, if necessary parties. 1 Daniell Ch. Pldg., 333; Story's Eq. Pldg., 99; Picquet v. Swan, 5 Mason, 561.

Bill itself does not make a case for interposition of a Court of Equity.

Misrepresentations (if made) must be made for the purpose of misleading and inducing party to do as he ultimately did, and must effect it.

No representations made here to induce Mrs. D. to make deed. *Mrs. D. proposed it.*

It is no where distinctly alleged in bill that Mrs. D. *was induced by alleged statements to make the release.*

Party must be misled and deceived, but if he know alleged statement to be false when made, it cannot be said to influence him. 1 Story's Eq., sec. 202.

Mrs. D. had *good reason to know* there had been reconveyance (see allegations in bill.)

Misrepresentation must be not only material to the act done, but must be in something in regard to which one party places trust and confidence in the other. 1 Story's Eq., 213, sec. 197, 199.

Must be mutual trust and confidence; here certainly was none.

It is submitted that bill itself in its allegations makes no case warranting interference of court; and if it did, the answer, *denying all material allegations in bill,* is not overcome by evidence required.

APPLETON, J. The complainants, in their bill allege that Moses Plummer, on the second of May, 1840, without consideration, conveyed to his daughter, Jane Plummer, since, by marriage, Jane Thurston, one of the defendants, a tract of land therein specifically described; that on the second of June, 1847, she reconveyed the same to her father, but that the deed was not recorded, and was mislaid; that in December of the same year said Moses deceased, leaving six heirs, of which number Mary Ann S. Dockray, the mother of the complainant, was one; that the defendants are the other heirs or the representatives of heirs living at the time of his decease; that after the decease of her father, said Jane falsely denied

to said Mary Ann S. Dockray and the other heirs the fact of a reconveyance by herself to her father, and asserted a claim to the premises in controversy in her own right; that subsequently, at the instance of Samuel M. Plummer, one of the heirs, she acknowledged in writing, under her hand, on the back of the deed of her father to herself, that the same was null and void, and that she had reconveyed to him the premises thereby conveyed to her, and that they constitu ted a portion of her father's estate.

The bill further alleges, notwithstanding this, that said Jane afterwards falsely denied to the heirs that she had ever reconveyed the premises in controversy to her father, or that she had ever signed any such memorandum on the back of her father's deed as is set forth, and utterly refused to con- vey to the heirs their several interests in the same ; that on May 12th, 1848, Mrs. Dockray and some of the heirs had an interview with said Jane, at which they endeavored to induce her to release to the other heirs their several shares, which she declined doing, asserting her title to the premises, and denying the truth of the several facts previously set forth in the bill; that at this time a settlement was effected, by which, in consideration that Mrs. Dockray would release to said Jane her interest, being one-sixth in a part of land of which said Jane had a conveyance from her father and of the lot in dispute, the said Jane conveyed to Hannah Hersey, one of the heirs of her father, one-fifth of the estate, and gave a bond conditioned to convey to each heir respect- ively, excepting Mrs. Dockray, one-fifth of the same.

The deed of release from Mrs. Dockray to Mrs. Thurston bears date 12th May, 1848, and the bond from Henry Thurs- ton and wife recites this deed as part of the consideration for its excution. The obligees, of whom Samuel M. Plummer was one, do not seem to have been present at this time, and whether the bond was ever in their hands or under their control is not stated in the bill, nor is there any proof on this subject.

The answer of Henry Thurston and wife, who are the on-

Dockray and wife *v.* Thurston and wife, and als.

ly parties defendant upon whom service has been made, and who have entered an appearance, admits the existence of an unrecorded deed from Jane to her father of the premises in controversy, and of a memorandum signed by her on the back of her father's deed to her as set forth in the bill.

The prayer of the bill is for a reconveyance of the sixth conveyed by Mrs. Dockray to Mrs. Thurston on May 12th, 1848, and for the payment to the complainants of their share of certain money received by her of the Atlantic Rail Road Company as damages.

The bill alleges that Jane Thurston, formerly Plummer, had a deed from her father of another lot in which Mrs. Dockray released her interest, but it does not seek for a reconveyance of the same. As it contains no allegations that this deed was improperly obtained, it may be assumed the release was made to embrace the second tract for the purpose of quieting her title to the same.

The effect of the arrangement of May 12th, 1848, was to divide the share of Mrs. Dockray among the other heirs. Mrs. Thurston thereby received a conveyance of her sister's sixth, and conveyed one-fifth of the whole estate to Hannah Hersey; and by her bond contracted to convey the same interest to each of the other heirs. When the conveyances contemplated should have been executed, Mrs. Thurston would retain but one-thirtieth more than her share by inheritance—the other four thirtieths conveyed to her by Mrs. Dockray being divided among her co-heirs. Mrs. Dockray, induced by the fraudulent conduct of her sister, seems to have been willing to surrender her interest in this portion of the estate, for the sake of procuring for the other heirs their legal rights. Whether she was aware of the written memorandum on the back of the deed of Moses Plummer to Jane Plummer, by which the latter recognized her rights and those of the other heirs, is not stated, nor is there any proof on the subject.

The complainants in their bill seek a reconveyance without offering to cancel or surrender the bond given by Henry

Thurston and wife. The obligors in that bond may be liable to convey according to its terms to the obligees. If they should so convey and should further be compelled to convey according to the prayer of this bill, they would lose their interest in the estate of Moses Plummer. The complainants would have the land deeded by their mother to Jane Thurston reconveyed to them, and at the same time the bond which was the consideration of that conveyance would be in full force. The defendants, Thurston and wife, would be bound by their contract and yet would be deprived of the consideration on account of which they had entered into it.

As it appears that there were others than Thurston and wife among whom the complainants' sixth has been or is to be divided, who are interested in this controversy, they should be made parties to this litigation.

This bill, as the matter is now presented, cannot be sustained, because, though there may have been concealment of the truth and fraudulent misrepresentations on the part of Jane Thurston, the complainants pray for a reconveyance of certain lands without discharging or offering to discharge the bond which was given in consideration of the deed of the same, and without procuring a reconveyance to Jane Thurston of the thirtieth deeded by her to Mrs. Hersey over and above her hereditary right; and because the other parties interested in the estate and in the bond of said Thurston and wife have not been notified of the pendency of this suit, and have not become parties to the same; and because a division of the estate, according to the hereditary rights of the heirs, as prayed for, cannot be made in the absence of those whose rights are to be determined by such division.

All who are interested in the estate may be made parties, and the bill be amended on terms.